UNITED STATES DISTRICT COURT
for the
Eastern District of Arkansas

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
NOV 21 2013
JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

ROGELIO HERRERA ISAIS
    Plaintiff,
VS

UNICOR
    Defendant,

4:13cv0666-SWW

This case assigned to District Judge Wright
and to Magistrate Judge Ray

**COMPLAINT**

Rogelio Herrera Isais, the above named Claimant, of   2304 Tierra Dorada Boulevard    Mission
    (Name)                                                  (Street)                       (City)
Texas      78572      956-330-4275     County of    Hidalgo    says:
(State)   (Zip Code)   (Phone No.)

Agency Involved:  Unicor                                Amount sought:  3,000,000.00

On November 6, 2002, at around 9:45 am, I, Rogelio Herrera Isais, was an inmate at Arkansas Federal Correctional Institution working with Unicor, that morning I was working a regular shift at the table saw, I was removing a piece of wood from the table that was near the saw when suddenly the saw caught my left leather glove and pulled my hand towards the saw injuring my fingers. I was rushed to the Baptist Memorial Hospital and had a surgical procedure resulting in an amputation to my left hand ring finger and little finger. On the incident report done that day, Mr. Miller (Company Foreman), stated that I failed to use safety devices on the table saw resulting in my injury. I had been working for Unicor for 84 months and always followed the company rules, using leather gloves that are required by the company at all times, even when there is a sign on the table saw that says that you should not use loose shirts, loose belts and gloves.

**THE UNDERSIGNED** states that he is familiar with the matters and things set forth in the above complaint, and that he verily belives that they are true.

_Rogelio Herrera Isais_
    Applicant's signature

_ROGELIO HERRERA ISAIS_
    Printed name

_11/18/2013_
    Date

_Johanna J. Herrera_
    Signature of person translating

_Johanna J. Herrera_
    Printed name

sjp 10610 11/07/2002
DATE OF DICTATION: 11/06/2002

BAPTIST MEMORIAL HOSPITAL
FORREST CITY, ARKANSAS

PATIENT
NAME: HERRERA, ROGELIO
ACCT#: 0231000051
DOCTOR: Apurva Dalal, M.D.
ROOM#: OPO
UNIT#:

REPORT OF OPERATION

PREOPERATIVE DIAGNOSIS: Amputation of the left hand ring finger and little finger.

POSTOPERATIVE DIAGNOSIS: Same.

SURGEON: Apurva Dalal, M.D.

DATE OF PROCEDURE: 11/06/02

ANESTHESIA: General

Antibiotics given: 2 grams Ancef given two hours before surgery.

FINDINGS (including the condition of all organs examined) and PROCEDURES (including incision, ligature, sutures, drainage, sponge count, and closure):

History of present illness: Rogelio Herrera is a Federal Prison inmate here in Forrest City. Patient was working and cutting wood when he accidentally cut his fingers with a saw. Patient cut his fingers just distal to the DIP joint of the ring finger and part of the little finger. Patient was explained that we would have to do the refashioning of his amputation. It was explained that he may not have any nail. The only way to try and preserve the function would be to further amputate so we can create skin flaps. He understood the risks, benefits and complications, and wanted this procedure.

PROCEDURE: Amputation refashioning of the left hand ring finger and little finger.

Narrative of procedure:--
The patient was brought to the operating room, he was given general anesthesia, and his left arm was cleaned and prepped in the sterile fashion. Using Penrose drain the blood from the left finger was exsanguinated. I&D was performed all the way down to the bone. The wound was irrigated out thoroughly. We found that the patient had a partial avulsion of the nail of the ring finger. He had a distal phalanx which was protruding out of the wound. The amputation was completed and it was a guillotine amputation. We went ahead with a Rongeur and debrided the distal phalanx bone. Under the skin, the matrix was opened up. The

10610 11/07/2002
DATE OF DICTATION: 11/06/2002

BAPTIST MEMORIAL HOSPITAL
FORREST CITY, ARKANSAS

PATIENT
NAME:    HERRERA, ROGELIO
ACCT#:   0231000051                REPORT OF OPERATION
DOCTOR:  Apurva Dalal, M.D.
ROOM#:   OPO
UNIT#:

nail was excised and the flap was raised from the volar aspect and it was sutured back dorsally. This was sutured using plain catgut. 3-0 multiple sutures were taken. Before suturing the edges of the stump were made fresh. The volar flap appeared to be viable after the tourniquet was released. Examination of the little finger also showed similar amputation and the refashioning was performed in a similar way; however, the nail did not have to be sacrificed completely on the ring finger. Wound was I&D'd on the ring finger also and closed using 3-0 catgut. Sterile dressing was then applied over the wound.

Patient tolerated the procedure well and was brought to the recovery room in stable condition.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**INMATE INJURY ASSESSMENT AND FOLLOWUP**
(Medical)

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| FCI FC | Herrera-I, Angelio | 64049-077 |

| 4. Injured's Duty Assignment | 5. Housing Assignment | 6. Date and Time of Injury |
|---|---|---|
| UNICOR | HA | 11-6-02 0925 |

| 7. Where Did Injury Happen (Be specific as to location) | Work Related? | 8. Date and Time Reported for Treatment |
|---|---|---|
| UNICOR | ☒ Yes ☐ No | 11-6-02 |

**9. Subjective:** (Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)

"I was pecan something and had my left hand caught in the saw by accident"

X _____
Signature of Patient

**10. Objective:** (Observations or Findings from Examination) — X-Rays Taken / Not Indicated
NKDA BP 193/122 P 82 R 22     X-Ray Results: Referred to BMH

Pt arrived at HSU holding L hand c bloody cloth, three fingers injured. L hand 3rd digit: Tip of finger past fingernail appears to be missing - continuous oozing of blood from tip. 4th digit: nailbed/tip of finger appears to be missing - moderate amt of continuous oozing noted from tip. 5th digit: finger

**11. Assessment:** (Analysis of Facts Based on Subjective and Objective Data)
pad appears to have jagged lacerations c mild bleeding, tip of finger appears to be intact.

**12. Plan:** (Diagnostic Procedures with Results, Treatment and Recommended Follow-up)
(1) Fingers cleaned c sterile H₂O. (2) Sterile 4x4s placed to tips - pressure bandages applied to fingers. (3) Toradol 60mg IM. (4) Called Garrido PA
(5) Pt transported to BMH per ambulance
(Safety notified - pictures taken by Safety Dept.)

F. Garrido, PA
FCI Forrest City, AR

**13. This Injury Required:**
☐ a. No Medical Attention
☐ b. Minor First Aid
☒ c. Hospitalization BMH-FC
☐ d. Other (explain)

Td vaccine 3/94

☐ e. Medically Unassigned
☐ f. Civilian First Aid Only
☐ g. Civilian Referred to Community Physician

K. Cook, RN
FCI - Forrest City

Signature of Physician or Physician Assistant

Self Carboned Form - If ballpoint pen is used, PRESS HARD

Original - Medical File
Canary - Safety
Pink - Work Supervisor (Work related only)
Goldenrod - Correctional Supervisor

```
                                         Mr. Rogelio Herrera-Isais
                                              Reg. #64049-079/WD
                                     F.C.C. - Forrest City - Low
                                                    P.O. Box 9000
                                           Forrest City, AR. 72336
```

October 31, 2005

Mr. Michael D. Hood, Esquire
Regional Counsel/SCRO
4211 Cedar Springs Road, Ste. 300
Dallas, TX. 75219

Dear Mr. Hood:

### Re: Admin. Tort Claim #TRT-SCR-2005-02381

Pursuant to your letter dated July 7, 2005 (attached) I've attempted numerous time to obtain the documents you mentioned (Inmate Accident Compensation System) from the Safety Manager/Department here at F.C.C. - Forrest City - Low, but to no avail. I have enclosed examples of my effort as verification of this fact.

Thus far, a total of three (3) written Requests to Staff have gone unanswered in addition to numerous verbal requests. My last conversation was with a Mr. Barney Tatten, through a translator, when he was the IDO. He checked the computer and stated that the reason he has no record is that the UNICOR Representative has not forwarded the paperwork to him. It is important to note that this stems from an accident that occurred in November of 2002, some three (3) years ago.

Accordingly, I am renewing my request for your assistance in this matter, helping me to obtain such forms or otherwise. May I please suggest that your office call and/or write this department. Any assistance you are willing to give me will be greatly appreciated!

At closing, I would like to thank you in advance for your time/concern towards this matter. As I will remain;

Respectfully,

s/ *Rogelio Herrera-Isais*
Mr. Rogelio Herrera-Isais


cc: RHI/FILE
    (Enclosure(s))
    F.C.C. - Forrest City - Low/Safety Dept.
    (Mr. Barney Tatten)

AFFIDAVIT OF MICHAEL HARWOOD
===

Comes now Michael Harwood, being of lawful age and swears under penalty of perjury, as follows:

1.) My name is Michael Harwood and I have first-hand knowledge of the facts set forth in this Affidavit.

2.) I did witness many heated arguments between Mr.Short and Mr.Rogelio Herrera.

3.) These arguments were always the result of Mr.Short's provocations and not those of Mr.Herrera.

4.) That while Mr.Short yelled in english, Mr.Herrera did so in spanish.

5.) Mr.Herrera speaks no english and that during the time we worked at our assigned station he never spoke english in my presence.

6.) To the best of my knowledge Mr.Herrera reads no english for never did I witness him in the possession of english reading matereal.

I Michael Harwood swear under penalty of perjury On this 19 day of December 2002, that the above stated facts are true and correct to the best of my knowledge and ability.

Signature: *Michael Harwood*

Date: 12-19-02

Michael Harwood #06037-010
Federal Correctional Institute
P.O.Box 9000                H-A
Forrest City, AR.    72336

## AFFIDAVIT OF FRANK DALLRIVA

Comes now Frank Dallriva, being of lawful age and swears under penalty of perjury, as follows:

1.) My name is Frank Dallriva and I have first-hand knowledge of the facts set forth in this Affidavit.

2.) Rogelio Herrera-Isais speaks no english nor has ever spoken any english to me or, in my presence.

3.) That never in my presence has Mr.Herrera-Isais ever read any type of english literature.

4.) That on several occasions Mr.Herrera-Isais and Mr.Short had verbal altercations while working at our assigned station.

5.) That Mr.Short was always the instigator in these altercations.

6.) Mr.Short always raised his voice and yelled at Mr.Herrera in english while Mr.Herrera did the same in spanish.


I Frank Dallriva swear under penalty of pujury on this __14__ day of December 2002, that the above stated facts are true and correct to the best of my knowledge and ability.

Signature: _Frank Dallriva_

Date: _12-19-02_

Frank Dallriva #05217-089
Federal Correctional Institute
P.O.Box 9000                      H-A
Forrest City, AR.          72336

As mentioned in the November 15, 2002 Request for Administrative Remedy I am not literate in the english language, therefore assistance was given in the preparation of the following.

The investigating Lieutenant indicated that my english skills were adequate and that therefore, he did not seek an interpreter. However failed to mention that he did not seek an interpreter due to a comment made by Lieutenant Alexander. In broken spanish Lieutenant Alexander stated:"Herrera, you speak english." After, I had requested an interpreter from the investigating Lieutenant. Reguardless of Lieutenant Alexander's assumptions of whether or not Herrera spoke or understood the english language, when Herrera requested an interpreter an interpreter should have been provided. An action clearly in violation of Herrera's due process rights for Herrera did request that an interpreter be furnished. Staff that interact with Herrera on a frequent basis that were interviewed and, indicated Herrera's english is sufficient failed to mention that Herrera always had another inmate accompanying him. UNICOR staff that interacted with Herrera failed to mention that inmates Pedro Gomez #76109-079 and Jose Barrera #99035-011 accompanied Herrera when speaking to him. In the unit inmate Orlando Zuniga #63726-080 usually accompanies Herrera as an interpreter. All the aforementioned inmates can testify to this as fact.

The UDC Chairperson's summary of Herrera's ststement does not accurately reflect what Herrera told him, as the interpreter at the UDC hearing can testify to. Where the Chairperson's assumption that Herrera's statement is accurate is highly questionable because the interpreter at his UDC hearing was never questioned about this matter. Thereby leaving the investigation of Herrera's assertions lacking support for the necessary corroboration to sustain the response given in Part B Response to request for Administrative Remedy #283578-F1.

The inmate witness at the scene of the accident statement is in fact very questionable as to reason for falsification. Animosity, spite and maliciousness can all be implied as well as jealousy and concern at losing his position to Herrera. Futhermore, it was highly known that inmates Short & Herrera were constantly at odds, and arguing as can be validated by Frank Dallriva #05217-089 & Micheal Harwood #06037-010, two regular crew/co-workers at that particular work station. However, inmate Short's #19308-009 statement is clearly questionable for the fact that inmate Short indicates that he was preoccupied with the measurement & guiding of a piece of wood into the saw. Which would have made it impossible for him to have witnessed Herrera's accident for inmate Short would have had his back to Herrera as a proper investigation would have revealed. Wherefore inmate Short's statement should not have been considered as evidence.

Finally, the incident report was written for a code #317; failure to follow safety or sanitation regulations. The greater weight of the evidence:1) adjacent photograph; shows all safety devices in place. 2) Staff not present when accident occured; therefore cannot say for true whether a code #317 occurred and, 3) section #25 Lieutenant's own statement of observing the saw & operating area;"...upon examining the push stick I noticed it had had several contacts with the saw blade..." All establish the validity that a code #317 <u>did not</u> occur. Supporting Herrera's request for Administrative Remedy.

For the following reasons Herrera request that the UDC decision and sanction be reversed and expunged from his record and be allowed to return to his job assignment and pay grade in UNICOR.

I Juan Rodriguez had a phone conversation with Mr. Thomas P. Trash. Mr. Trash is an Attorney for Herrera Rogelio #64049-079. I am translating for Mr. Trash and Mr. Herrera. Mr. Trash told me on the phone that Mr. Herrera had to sign the papers he had send him because under the law Mr. Herrera couldn't do anything until 45 days before he's release. The papers that Mr. Trash wanted for Mr. Herrera to sign was that Mr. Herrera would dismiss the case on the Federal Bureau of Prisons and could file again without Predusio 45 days before his release. Mr. Trash advised me that Mr. Herrera could file a lawsuite for worksmen compsations and that if he felt his right were violated then he could file and reopen the case that Mr. Herrera has file against the Federal Prison + employees for the lost of his fingers while working in the UniCor. Mr. Herrera has signed the papers that Mr. Trash send him dismissing the lawsuite against the Federal Prison with the deal that Mr. Trash said he needed to wait until 45 days before his release to file for any compusation for the lost of his fingers.

Thank you
Juan Rodriguez

9-21-07            51106-179

HERRERA, Rogelio           REG. NO. 64049-079     RECEIPTED: 12/26/02

CASE NO. 283578-R1         PART B - RESPONSE


You are appealing a UDC action of 11/09/02 for Code 317, Failure to Follow Safety or Sanitation Regulations.

The record of this disciplinary action reflects you were advised of your rights and afforded the opportunity to exercise those rights in accordance with Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>. After thorough review of the incident report, the investigation, the evidence and related documentation, there appears to be sufficient evidence presented to support the UDC's decision. The sanctions imposed are within policy and commensurate with the finding you committed a prohibited act in the Moderate severity category.

This incident involved the UDC finding you failed to follow safety regulations when you failed to properly use an available safety device while using a table saw which resulted in personal injury. The investigating Lieutenant interviewed witnesses who confirmed you failed to use safety devices available. In addition, UNICOR general rules, written in Spanish and English, identify the safety device and how to properly use it while operating the saw. The UDC relied on the greater weight of evidence to make the determination you failed to follow safety regulations.

You contend your English language skills limited your ability to understand the disciplinary process. However, staff who work with you on a regular basis believed you spoke adequate English to understand the discipline process. The questions and responses in the investigation were simple and direct. The greater weight of evidence was your failure to follow posted safety regulations which were available to you in Spanish.

Therefore, your request for relief at the Regional level is denied.

In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons, Administrative Remedy Section, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in that office within 30 days from the date of this response.


3-27-03
Date

Ronald G. Thompson
Regional Director



